Next, in Case 17-1042, BNSF R. Co. v. Loos. Ms. Black. Justice Breyers. He'll be back. Okay. Thank you, though. Thank you, Mr. Chief Justice, and may it please the Court. For three reasons, a payment by an employer to an employee for lost wages under FELA is compensation under Section 3231E1 of the Railroad Retirement Tax Act, or RRTA. Ms. Bond, before you launch into that, can you tell us why the Railroad cares? I mean, if he doesn't – if it's not – he's not subject to the tax, neither is the employer. So, what is the stake that you have in this? Sure. I mean, although the respondent argues that the employer is subject on his fallback. But generally, to answer your question, the employer cares because under a system that would credit all lost wage FELA awards to retirement benefits, but without any tax burden, has a long-term risk of insolvency or instability to the system. So, there's a short-term savings to be sure, and generally, people don't like to pay taxes for the sake of taxes. But the entire purpose of this tax act is to fund the retirement benefits for railroad employees, and pensions are good for the railroads. So, that's the answer. If I could get to the three reasons. First – There's no personal interest. Sure. Sorry. There's no personal interest in the sense of if we say that it's not, then the railroad doesn't withhold and pay the State. Did you in this case? You wanted a credit against the award, but did you in fact pay anything, any Federal taxes beforehand? Yes. So, all 9,000 has been paid. The 6,000 portion of the employer's share was paid, and 3,000 was withheld from the payment of the FELA award to account for the employee's share. And the railroad – and the reason why the dispute came up is the railroad wants an offset for the 3,000 that should have been withheld from the railroad employee. So, get to the statutory text. And the first reason is the statutory text and structure make clear that such a payment is for services rendered, and that employees need not be an act of service to pay for services rendered. Second, a payment for lost wages under FELA is no different from the workers' compensation, sickness, and disability pay that respondent agrees count as compensation. And third, taxing a payment for lost wages under FELA furthers the RRTA's purpose to fund benefits under the Railroad Retirement Act, or RRA. First, a payment for lost wages under FELA is remuneration paid for services rendered as an employee under subsection E1. A payment for lost wages under FELA compensates the employee because he rendered services up and until the time of injury. Indeed, by definition, an employee cannot recover lost wages under FELA unless he had been rendering services at the time of injury. Additionally, this Court in Narotco and Quality Stores interpreted virtually identical language under the Social Security Act and FICA. There, this Court interpreted the phrase which defined wages for services performed includes all compensation paid for the employment relationship. Your opposing counsel argues that Narotco is discredited, that that case didn't follow the text. We shouldn't follow that methodology here. Can you respond to that? Sure. Respondent argues that it's discredited under Cleveland Indians for the very last portion of Narotco, which has nothing to do with the question here. So the very last two paragraphs of Narotco said that you credit the amount of lost wages in the period for which they're earned. And then Cleveland Indians came along and the IRS said, yeah, we know that, but we want to credit FICA in the period paid. And so in the opinion for the court, Cleveland Indians said, we recognize that the two should go in tandem, but we're going to defer to the IRS, IRS's allocation. And here, there's a much more substantive distinction because the employee wants all the benefits under the benefit statute, but none of the ability. But I think your other question went to the discreditedness. I think you mean somehow in 1946, the court wasn't reading the text. I think- That's their argument. I think that's their argument, and I think it's certainly wrong. We fit the plain language because the employee rendered services and nothing in the text says that you can't be paid for periods of time when you're not in active services because you rendered services. But the court purported to be interpreting the phrase services performed. And you can say pragmatically, but I think it's also textually that when you have an employment relationship and you compensate the employee, that's generally for services performed. Well, counsel, when I think of wages for services performed, and maybe it's too simplistic, but I- I doubt it. We'll see. I think of it as the compensation that an employer voluntarily gives the employee. So not just the hourly wage, but the sick time, the vacation time might be included as part of the package for the services when you are present. I include that payment. I think of a judgment of a court for negligence awarded involuntarily against the employer's consent as something very different. What's wrong with that? Okay. I don't want to call it simplistic, but I do think it's wrong. Go ahead. Okay. Here's why. I mean, there's absolutely nothing in the statute that makes anything that you said relevant. It just has to be a payment for services rendered. And nothing in the statute distinguishes between a legal obligation arising under your contract- Well, but see, that's not services rendered, is it? It's payment for a judgment of a court. Right. And you can have a disability payment that comes in the form of judgment. He concedes that workers' compensation is covered. The judgment or back pay award in Narocco was a judgment based on a wrongful discharge by violation of a statute. But there's just nothing in the sense of the payment that it says it has to be either from I think he concedes settlements count. So I don't know why it's different that a court ordered the payment. I mean, there's really no basis. I get that there's a tough line drawing problem here, and I have some questions for the other side on that. But if you just in isolation deal with the field of judgment compared with, say, sick and vacation time- Sure. I think maybe you're going to fault versus a no-fault scheme, and nothing in the statute says there has to be fault or no fault. It's just like workers' compensation is he concedes is payment for services rendered. You just don't have to prove negligence. But if you're suing to get maternity leave, you have to prove you're pregnant. If you're suing to get disability leave, you have to prove that you're disabled. If you're suing for workers' compensation, you have to prove that it was service-connected. And if you have injuries. So I think what you're saying is if you have to sue, you can't be paid for services rendered, but if the employer pays it voluntarily, that definitely is atextual. Sotomayor, as a practical matter, going back to a part of Justice Gorsuch's question, in most State law verdicts, there is just a payment. It's a general verdict. How are you going to figure out which part of the award is subject to the deduction? And Justice Gorsuch mentioned a negligence judgment. What are we going to do with those? Here, that's not at issue, because there's been a concession from the beginning that this award had to do with past pay and medical expenses. So we know the amounts under FELA, but we may not know them in a general verdict. So does his argument have to do with that? Or does he have more purchase in those situations? No, because under the Railroad Retirement Act in Section 231H-2, this has been around since 1946, there's a presumption that a personal injury award, the entire amount, is treated for lost time. And let me just point you to the JA on 78A, the Railroad Retirement Board, gives you sort of the current, the way they treat this. But let me go back to the statute. The statute says all of it counts for lost time. However, the parties can take out any amount that they want to allocate for reasons other than lost time. So the parties are free to say whatever they want. They can say that $10 was lost time. They can say all of it was lost time. So in a general verdict situation, you know, I think what the RRB would say is we're going to count it all as lost time unless there's an allocation made. Now, what Respondent tries to say is, well, somehow there's some shenanigans going on because, you know, there might be a reason to attribute it less to lost time on the taxing side. But let me tell you what's going to happen if we lose because of H-2. If we lose, an employee can take an entire judgment, no matter what was devoted to lost time, and get full credit and pay zero tax. And the incentive will be there's just no downside to doing that. So you would take all of it and get your credit and pay absolutely no taxes. And that's just H-2 in the statute. There's the RRB guidance on it. The SG's office can, you know, confirm all this. But that's just the way this has been treated. Now, in the state cases that have addressed the issue have said that we'll use the same allocation scheme on the taxing side. So all three, at least state Supreme Courts to address it, have decided that issue. And, Justice Gorsuch, I do want to say Narodco involved a judgment, although it was by the NLRB. So an agency judgment. And, Justice Kavanaugh, let me just say, although I think there's this textual and the pragmatic definition the Court gave, I do think it's worth just noting the concurrence of Justice Frankfurter, who said sort of that, you know, we're going to deem employees to be in the service of the employer if they were forced into idleness because of the employer's wrongdoing. I mean, that's just an alternative way of looking at it. You don't have to look at it that way, but. Kagan. If you're right about that theory, why wouldn't the pain and suffering component also count? Well, because the pain and suffering is not payment for services rendered in the same way a lost wage award is. Well, if I understood your theory, it was something like it happened while he was on the job, and therefore what follows is can be understood as services rendered. No. And the pain and suffering as well. It's like, well, you were injured on the job, and that's why you had this pain and suffering. Sure. It's not payment for services rendered in the same way, because the amount of lost wages is directly tied to the salary for services rendered, and pain and suffering amount has nothing to do with your salary, your employment, or anything else about the employment relationship. Plus, there's a strong textual argument. You don't have to take my analysis. Congress has already distinguished between lost time pay and other factors associated with the personal injury award. So Congress has said the parties are free to only count as a personal injury award just the lost wages. So Congress was debating this back in 1946, all these issues about what to do with things that were associated with other lost time, and they settled on this. We're going to presume it's all counted, but we'll let you take out anything that's not related to lost wages. So question? The Court of Appeals relied heavily on the fact that Congress in 75 and 83 took out the reference to payment for time lost. Sure. So, I mean, let's start again with first principles. Under that view, that takes out, I mean, everything, the vacation, the holiday, everything. So that's fine, and I think that respondent concedes that away and doesn't defend it for good reason, and that's because the rule against superfluity has the provisions in E1 and E4 that are time lost payments for workers' compensation, sickness, and disability. And those exceptions wouldn't be in there unless they were otherwise included within the operative definition. But, Justice Kavanaugh, let's look at the timing, and I think that this is pretty dispositive as well. Congress added the sickness, workers' compensation, and disability payments in 1977, and then amended them in 1981. So that was after Congress took out the including remuneration paid for services rendered in 75. And then when Congress took out in 1983, I'm sorry, in 75, when Congress took out the phrase, then they added the exceptions later, they also left in seven references to time lost and personal injury in E2. So we know that Congress continued to think that time lost payments were covered. Now comes 1983, and Congress takes out E2, but it didn't change the operative definition in E1, and it left in all the exceptions for workers' compensation, sickness, and disability that presuppose time lost is covered. So I do think that, you know, the including remuneration paid for time lost, you know, is fairly read as an illustrative example of the broader definition. I'm going to briefly go over the 104 argument, if I could. Just putting, this is the argument that Respondent makes as a backup, that because personal injury awards are excluded from gross income under 104, and an employee is taxed on his or her income, you should take out gross income. And I'm not going to be able to explain it past that point, but that's the beginning of his argument. The problem with it is, first of all, 3201, the statute that taxes on income does not use the word gross income. It just says income. And no matter what word it used, we think it just describes the source of the tax. And if you just look at the language, the employee's income has no bearing on either the tax base or the amount of tax owed. It's just describing the source. And that tax base is identically defined for the employer in Section 3221, so as a textual matter, it can't be different. And finally, Congress incorporated nine express exclusions from gross income into the definition of compensation, showing Congress knew how to incorporate gross exclusions when they wanted to, and Section 104 is not one of them. And if I could reserve the remainder of my time. Roberts. Thank you, counsel. Ms. Kovner. Kovner. Mr. Chief Justice, and may it please the Court. As Respondent now concedes, the Eighth Circuit misconstrued the RRTA when it held that compensation includes only payments for hours when the employee is in active service to the employer, a holding that would exclude sick leave, vacation pay, and severance. There are three main sources that each establish that instead compensation includes employer payments for hours when an employee is absent from active service, including time lost. Starting with text, the RRTA contains limited exclusions for workers' compensation benefits and for certain types of sickness and disability benefits. Those exclusions would be superfluous if the term compensation only reached payments for periods of active service. As to precedent, since 1946, this Court has construed parallel language in the Social Security Act to reach all payments arising out of the employer-employee relationship, including time lost. And, Justice Kavanaugh, to your question about whether that continues to be good law, this Court reaffirmed that precedent. It applied it in quality stores just in 2014. And those decisions support also construing the RRTA to reach time lost. And third, this interpretation appropriately reflects the interlocking structure of the RRTA and the parallel benefit statute known as the RRA. Time lost payments count as compensation under the RRA and are credited towards an employee's retirement benefits. Interpreting the RRTA's definition to cover those payments creates symmetry between interrelated tax and benefit provisions. And if I could start by just turning to Justice Gorsuch's question about why it's not different, that this payment is essentially a statutorily mandated payment that results from a judgment at the end of the day. We think there are two main sources that show that the fact that it's a legal obligation doesn't make a difference. The first is in the statutory text. The workers' compensation carve-out is really appropriate, is really important, because it shows that it can be statutory. Roberts. That's where I get stuck, too. I've got some questions about that for your friend on the other side. What's your other one? The other one is Narodco, which also involves essentially a judgment. Sotomayor, could you tell me what we should make of the fact that the IRS doesn't appear, you might correct me, since 1980 at least, to bring enforcement actions to assess penalties or back taxes to a railroad employee who has – who did not withhold a portion of the FILA judgment? So we don't think that's exactly correct, Justice Sotomayor. So I think to understand the IRS's position, the most relevant indicators are, first, the regulations, which have continuously said no time-loss payments are covered since 1937 and continue to be present. You said it, but you haven't appeared to do much about it. So I don't think that's the case. I mean, whenever we've been asked, there's a technical advice memorandum from 1980 dealing specifically with FILA judgments saying, again, they have to be paid. I think the difficulty that may arise is these are suits that occur between not the IRS, but between a railroad employee and an employer. And I think what the affidavit on the other side is asserting is that railroads may essentially not have been complying in some cases, I don't know how many cases, with the IRS's regulations. And if that – if that has happened, it's contrary to our regulations. It's not something we've necessarily known about because it's a suit between a taxpayer and a railroad, and if neither of them reports it, it may be that there are cases where, you know, the IRS hasn't been aware of, hasn't gone after that money. But the IRS has been aware of it. Ginsburg. The railroad pays the full tax, but charges the railroad worker for his or her share. Is that how it works? That's right. The railroad is required to withhold both – to withhold from the employee's pay the employee's share, and then it pays both shares. I would be curious, your answer to Justice Sotomayor and Justice Kagan's questions earlier. So what do we do about a general verdict where there's no allocation between what might be later thought by some to be compensation for lost services and other things? What do we do about a pain and suffering which might be classified as compensation for lost time as well? What's the government's view on those complications? Yeah. So, I mean, taking the first question first, the what if there's no allocation, I agree with the articulation by my friend on the railroad side that if there's no allocation at all, and there's some material that's in the JA, there's sort of detailed guidance on allocation from the RRB, but I think if there is no allocation, the presumption is it's going to be treated as time lost. I think the RRB says, nonetheless, the employer and the employee are allowed to come in even after the judgment and allocate it between time lost and other sources. And we think, you know, that's what's H-2, which is still in the RRA, suggests is the appropriate way to handle this. And I think H-2 is also part of the answer on pain and suffering. H-2 clearly contemplates that when you have a judgment, it's going to contain in part taxable payments for time lost and also other kinds of damages, and that is compensation. And we think there's a common-sense reason for treating pain and suffering as different, which is lost time payments are a substitute for something that's taxable. They're a substitute for wages that the employee would have been taxed on, and they're getting credited to your benefits on the RRB side. In contrast, pain and suffering judgment is essentially putting you in the place you would be if you hadn't lost some sort of psychic or physical well-being that wouldn't have been taxed. So we think it's understandable that Congress, in making those sort of changes that make clear that time lost and pain and suffering are treated differently in 1946, we think it's – it makes sense that Congress thought of these two things as different, as one is taxable and one is not. And if you look at the history of those 1946 changes, I think that's sort of the distinction that's being reflected in that history, too. Kagan.           Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. you can think of? You could get this if you were injured your first hour on the job without having worked at all, without having rendered any services at all. So what about that? Against it there are a number of forms of compensation that operate like that. You know, so one example that NARATCO gave is something that would be compensation and that it was thinking of as like payment for when you are required to be paid for jury service. I mean, that's a benefit you would be entitled to on day one. It doesn't necessarily correlate to hours you work. But it's a benefit you get as an employee. Another example would be like maternity leave, sick leave in certain kinds of circumstances. I think there are a whole bunch of benefits that you get as part of your sort of employee compensation that don't exactly correlate to individual hours that you work. And even setting aside all these, you know, textual and precedential indicators, you know, we would note that this has been the position of the agency since the statute was enacted in 1937. Congress has amended the statute many times against that backdrop. And it hasn't chosen to change that agency interpretation. So I think this is an interpretation that's informed what Congress has done. It's added exclusions that don't really make sense unless time loss is covered without changing the agency's interpretation. So under principles of acquiescence and Chevron deference, if there were ambiguity, I think the agency's interpretation would control. Roberts. But you actually don't think there's ambiguity. We don't. We think this is a clear case. If there are no further questions, we would ask that judgment bill be reversed. Thank you, counsel. Mr. Frederick. Thank you, Mr. Chief Justice, and may it please the Court. The issue in this case is whether the Court construes the statute as it's currently written or whether you construe it the way the other side would like it to read. Our position is that the plain language controls and that the statute now, in effect, does not contain all the words and extra provisions that get you to a place where services rendered means not services rendered, which is the core of the other side's position. Services rendered has a very plain meaning. It is providing work under the supervision of another person. When Mr. Lose was injured here, he was unable to provide services. That was the whole point of him bringing his FELA claim. Well, but he had provided services, and that is what entitled him to the payments that he received. Incorrect, Mr. Chief Justice. What entitled him to the payments that he received was that he couldn't work, and it was the railroad's negligence. It's not just somebody off the street who couldn't work. It was an employee who couldn't work. And he was an employee because he had rendered services. Right. But he hadn't rendered the services. That's the whole point. He was unable to render the services because he was hurt. So let me explain a little bit about how day call works in a union hall. Here, Mr. Lose was subject under the union terms to be in a union hall, and if he's called into a crew, he makes money. He gets paid for that day. If he's unable to make it to the union hall because he's injured, it's considered nothing. He doesn't get paid for that. He doesn't accrue any vacation pay for that. And the whole point of the FELA judgment here was that because he was injured, he wasn't able to be in the union hall at the time the railroad called for people to serve on their crews. So if you were to suppose that Mr. Lose was walking along at the time he was injured and he was with a non-railroad employee, and suppose that non-railroad employee was with a coal company, and they both fell into the drainage part pit because of the negligence of the railroad, you wouldn't say that the past wages or the lost wages that the coal company employee suffered by the railroad's negligence was, quote, for services rendered. You wouldn't say that at all. There would be no basis for saying that. And so it's odd to suppose simply because Mr. Lose is capable or subject to being called into a duty status for the crew, that you would treat him differently. But a lot of these kinds of arguments were made in Narotco, and the Court rejected those, admittedly in the context of the Social Security Act, but why not follow the same interpretation here? Well, what the Court in Narotco did was it construed the benefit statute. And what Cleveland Indians says, and is absolutely clear, is that you do not construe the tax statute the same as the benefit statute. The case of his case was about the allocation time period. It wasn't about the main holding of Narotco in terms of how it departed from Narotco. Right. But the interpretive method that the Court employed was different in the sense True. But the precedent on point interprets, says that time lost is part of services rendered or services performed in the context of the Social Security Act. So why not adhere to that same interpretation in this context? Because this Court, to my knowledge, has not ever said that you construe taxing statutes by looking at benefit statutes. And that is what exactly what Cleveland Indians holds. That's also what the case of Hisquierdo holds. Hisquierdo is directly on point for the Railroad Retirement Tax Act. The other side has no discussion about the language in that opinion which says that RRTA taxes are to be construed differently than the Railroad Retirement Board benefits. Ginsburg. Ginsburg. Your argument would go for the railroad as well as the employee, right? Yes. This railroad paid a tax that it wasn't required to pay. Could it seek a refund? Yes. And, in fact, the railroad didn't pay the tax until the case was on appeal in the Eighth Circuit. It did not pay the tax, you know, at the time of the judgment. It waited as a means, presumably, to enhance the persuasiveness of its argument on appeal. Now, Justice Gorsuch, I do want to address your workers' compensation issue. I was going to ask you if you didn't volunteer. Yes. There are – let me begin by giving a little bit of history, if I could. The FELA was enacted prior to most States enacting workers' compensation statutes, and it has been held by this Court to preempt, the FELA, to preempt workers' compensation statutes. So the only time where there's actually an overlap is where you have a purely, purely intrastate railroad. No, I follow all of that, and your footnote 9 was excellent in explaining that, but my question still remains. If a judgment of an administrative agency in a State setting, in an admittedly intrastate accident, is, you would concede, I believe, compensation for wages, then why wouldn't a Federal, interstate FELA judgment? Workers' compensation has always been treated differently in the sense that ensure the employee and the employer contributes to an insurance fund. It's no-fault insurance. And for that reason, it is more, I think, appropriately deemed to be an additional payment that is for services rendered, in the same way that sick pay accumulates over time in the appropriate circumstances. It didn't for Mr. Lowe's. But for vacation pay, if you're a Federal employee and you have a 40-hour pay stub and it shows a certain number of hours that you've accrued for vacation pay, those are all for the services that you rendered as an employee. Now, with respect to workers' compensation, because it's an insurance scheme that is no-fault, it operates in a very different way in terms of how it is funded. There is no pre-funding on the part of the railroad for FELA damages. The whole point of the FELA is to impose a duty of due care on the industry so that they are not being injured as a result of the railroad's negligence. And that's why Justice Brandeis, in the Winfield case in the early 1920s, made very clear that an FELA judgment is a penalty for the breach of a duty of due care. And Justice Scalia, in his separate writing in Cleveland Indians, said, in his view, the question is different as to whether or not it is a court-ordered judgment. That is not the way you ordinarily think of wages paid, which is the way that the phrase is used under FICA. So if you look at these textual differences, the line drawing, I think, Justice Gorsuch, is actually pretty straightforward. You ask the question, is the work and the pay here, the compensation, for services rendered? And if it's not, which clearly it couldn't be here because Mr. Lowe's was unable to render services, then it is outside the realm of the RTA. Breyer. You put an awful lot of weight on that, but I can easily imagine an employer explaining how we work in this company. We work in this company is that we pay you for services rendered. By the way, services rendered includes Christmas Day, though you're not here. By the way, it includes when you have a cold or sick for a few weeks. We count all that as payment for services rendered. That person is speaking English. So their first argument is, at least it's ambiguous. Their second argument is, go and look at all these changes that happened in the statute over those years. You know what they were arguing about? They were arguing about whether you tax it. At the time, you would have worked, or you tax it when you get it after the judgment now. They never thought you didn't get it at all. And the argument about the two statutes is it's a plus. We're not saying it's necessary, but it's a plus to treat the taxing statute symmetrical with. And their final argument is that, hey, 80 years is a long time. Justice Blackmun used to complain about all these changes. And indeed, 80 years, Congress has done nothing. Okay. Now, you've responded to some. I just want to be sure you get a chance to respond to all. Well, if I don't get them all in this response, Justice Breyer, please feel free to interrupt me. But on the history point, the other side, notwithstanding our challenge, cannot give you one instance, not one, where the IRS issued a deficiency notice because there had been a failure to pay RRTA taxes for an FELA judgment. If you look at the Federal Judicial Center's website, there have been something like 71,000 FELA suits filed just since 1970. Now, surely, if this had been the way the taxing service had been construing the statute, there would be at least $1 deposited from the Treasury as a result of an FELA judgment and a deficiency notice for a failure to do that. This is all a new argument, and the reason why the Railroad has come up with this new argument is simply to change the settlement dynamics that are going on. And by changing those settlement dynamics, they are seeking to impose the interorum threat of a taxation on the employee at the time when there is a negotiation. Sotomayor, explain that to me. Sure. What are they going to do? When there is a settlement negotiation, Justice Sotomayor, the question is, will you – will we pay you now for your range of damages, or will you run the risk of going to court? And as part of that calculus, the question is whether or not taxes would be owed and owing on that. And if the taxes are not owed and owing because it is a judgment, then that is for the worker's favor in terms of considering whether or not to settle the case. Sotomayor, there is a settlement under a FELA action, X amount of money. It has to be attributed to something, correct? Are you saying that? No, it doesn't, actually. There – there I don't understand their textual argument for that at all, because what they are asking for you to do is to accept the idea that the Railroad Retirement Board somehow has the administrative authority to construe a taxing statute. And that's never been the case where you have a benefit agency construing the taxing statute. The taxing statute is construed by the IRS. Now, if you look at the sources in our footnotes 2, 3, and 4 in our brief, they make very clear that the IRS in – in interpretations that post-date the sources that they are talking about here say that when there is a personal injury award, it is not subject to income tax. And in the first one, the citation that is on footnote 2 of our brief, the IRS specifically mentions that this would apply in the Railroad Retirement Tax Act context as well. That, I think, is on page 13 or 14 of that particular reference. They hang their hat on this 1980 advisory memo, but I'd like – this so-called TAM, but I'd like to point out that the – under the Code, Section 6110K3 of Title 26, Congress has said unless the Secretary otherwise establishes by regulations a written determination may not be used or cited as precedent, which is probably why that technical advice memorandum isn't cited in the Solicitor General's report, which has invoked that as supposed authority. But I would point out, secondly, that this TAM, this 1980 reference, concerns a version of the statute that no longer exists. It was part of the – it was construing a statute that was in effect up until 1975, and, Justice Kavanaugh, you're correct. At that time, that's when the time-lost language was taken out of the statute. That 1980 TAM was construing the previous version of the statute that doesn't exist anymore. So for purposes of understanding where there has been consistency or inconsistency, there's been rank inconsistency because the IRS has said different things in different means that are entitled to different levels of respect. And so – Ginsburg. Why do you think the language was taken out? I think there are – it's actually a good question, Justice Ginsburg. The intimation in the Railroad's brief here is that the Railroad thought it would be easier to administer without having that language. But there is no – there are no statements or legislative history that would suggest exactly why. One theory could be that the reason why the time-lost language had been added was to implement what was called the Washington Agreement in the late 30s. And the Washington Agreement was a deal struck between rail labor and the railroads with the idea of treating what was going on at the time in the industry of a lot of unsettlement, where workers who had been working for one railroad were part of – got caught up in the mergers, they lost the ability to maintain higher-paying jobs, and the Washington Agreement was to deal with what were called displacement allowances. These displacement allowances were defined to be time lost in that era. And it could very well have been that by the 1970s, this whole reason for that concept had – was no longer in effect. Now, the issue in that 1980 technical advisement was – Well, it's because the time allocation was changed. Well, you're talking about – I think you're making reference, Your Honor, to the paid versus owned distinction. But that – whether the timing thing had happened as a change didn't affect what was being taxed, which was services rendered. So whether you taxed the – I understand that, but a change – you didn't need the language anymore, is the argument, right, the time lost language anymore, because the allocation had changed. That's the argument. Their argument goes beyond that, Justice Kavanaugh, and that's when they are saying that the words including time lost somehow make services rendered mean not services rendered, because time lost is somehow an example or an illustration of the concept of services rendered. As a matter of plain English, that makes absolutely no sense. And we've given a bunch of statutory examples in our brief of where Congress would use the word including to be additive, like in the Longshore Act, where the language was used to refer to navigable waters, including piers. Now, I don't think anybody in this room today would think that a pier is a navigable water, but yet that's how Congress chose to express itself, and I would submit that the idea of time lost under no reasonable understanding of the English language would be services rendered either. So what you're left with here is what the Eighth Circuit deemed to be a very clear statute where the taxation that was sought to be imposed here was on a FELA judgment rather than on what services were rendered. And one other note about the Eighth Circuit panel. This Court in Wisconsin Central just last term construed the earlier part of that provision, the money remuneration. The Eighth Circuit panel that decided this case also had decided a case called Union Pacific, which handled the exact question at issue in Wisconsin Central and decided it correctly, as this Court opined. It was the same panel that handled both issues, and this Court sided with approval of the Union Pacific decision. Now, we're going to go to the Court of Appeals, and we're going to go to the Court of Appeals. I thought a key move in the Eighth Circuit decision was interpreting NAROTCO, and then it said, we recently determined that that definition can't be imported into the RRTA because the FICA tax is payment for employment, which is defined broadly. But in fact, NAROTCO does go to services performed, which is equivalent, the argument is, to services rendered. So how do you respond to that part when you rely on the Eighth Circuit? So specifically, that sentence jumps out at me. Well, again, it goes to the difference between benefits and taxes and the asymmetry  If you were to take the case of the Eighth Circuit, that's not what they were relying on. Well, no, but what they were relying – I think that what they were actually relying on, the fact that there is an asymmetry between benefits and taxation. And if you take that asymmetry, let's just play this out a little bit. If you're a rail worker and you work for 4 years and 11 months, you paid your RRTA taxes, you do not qualify for benefits under the Railroad Retirement Act because you haven't hit the first 5-year threshold. So it is clear from that example that there is an asymmetry between the taxing provision on the one hand and the benefits provision on the other hand. Justice Kagan, you mentioned the idea of just starting out. Imagine the system as it was existed in 1937, where you had literally thousands of railmen who were retiring or unable to work, and they were now all of a sudden getting benefits, but there were no tax revenues at that time that was sufficient to pay the benefits. So there has always been an asymmetry between the taxing provision and the benefits provision. And what they're seeking to do is to bootstrap the words that are in the benefits provision that no longer exist in the taxing provision, and to give those words meaning where Congress intentionally deleted those words. Now, if I could talk for a moment, Justice Sotomayor, about your administrability problem. There absolutely is a problem with the general verdict, because in many States there are general verdict forms, and this award would be for all manner of things. But the administrability problems actually go a little bit further than that, because in the case of Norfolk and Western v. Liopelt, which we cite in our brief but the other side does not, this Court held that juries are required to give be given instructions that the awards that they give under the FELA are not subject to income tax. Why is that important? The railroad asked for that instruction in the Liopelt case because it didn't want juries inflating awards because the jury would understand that if a cash of money is being paid out to the worker, it would be subject to tax. And that was leading the railroad to assert that these awards are being inflated improperly because juries thought that these were going to be taxable awards. So this instruction is given in most every FELA case that I'm aware of, and it was given in this one. It's in the Joint Appendix at page 91. That instruction given to the jury is that the FELA award here is not going to be subject to income tax. So you want to talk about administrability problems. Not only do you have a problem with the general verdict, but you have a problem with what would be colliding opinions of this Court if you were to accept what the jury is asking for here. On the one hand, the jury is told your damages verdict is not going to be subject to income tax, but if you award some part for past earnings loss, that will be subject to the RRTA tax. So the jury is somehow supposed to figure out, on the basis of these conflicting instructions, how much to inflate the award to cover the retirement tax part of it. But wait, it gets more complicated than that, because there are two different tax rates for the railroad retirement tax. There's Tier 1, which are more or less equivalent to the kind of Social Security taxes that we're familiar with under FICA, but there's Tier 2. Tier 2 are more like private pensions, and the rate of tax changes on that every year based on the assets that have accumulated under the control of the Railroad Retirement Board. So not only are you going to be asking juries to try to figure out somehow what tax rate to apply to cover this little sliver of lost wage earnings, but you're going to have to impose on courts the duty of keeping track every year, as soon as the Railroad Retirement Board resets the rate for the Tier 2 tax, because the jury is going to be concerned. Ginsburg's point is that if a jury is aware of railroad retirement benefits and taxation, the – I think you're quite right when you say you didn't want to inflate verdicts to account for income tax. But what is the likelihood that a jury is going to think of railroad retirement benefits? The point, Justice Ginsburg, and this is where I think looking again at this Court's decision in Norfolk v. Western v. Liepald is instructive, because they're, in my view, instructive. If the – if this is fair game, then why wouldn't it be possible for the worker's lawyer to say, now, this one part of it's going to be subject to tax, and ask for an instruction that the jury give the after-tax amount that would equate to the lost earnings portion of the judgment. And therein lies the rub, Justice Ginsburg, because if the lawyers are going to be debating about how the jury is instructed, it surely is fair game for the jury to understand exactly what the law is. And the – Ginsburg. Has any jury ever been instructed? Has any railroad attorney asked for a jury instruction about railroad retirement tax? Frederick. No, because it's never been taxed before. That's the whole point. This whole idea came up 5 years ago when the BNSF Railroad asked the Railroad Retirement Board for gratuitous advice about whether or not these awards could be taxed. And then they started up a process of litigating this issue. If you look at all the reported decisions, they all arise in the last couple of years, notwithstanding the fact that for 75 years from the inception of the railroad retirement system, there were – this was not an issue. Breyer. Because wasn't it – look, the way I'm thinking about it, and perhaps you tell me my – that I'm wrong, but very, very simply, Congress has loads of statutes spending money, and I sort of think a lot of people think what they spend money on has to be paid for. And many people think that taxes is a good way to do it. So other things being equal, and there are a lot of other things, to make these statutes work in harmony, so you tax what you're going to get later paid for, is a virtue. Now, Congress suddenly changed the practice, in your view, because it had been there since 1937, by amending these statutes. So we have a slight virtue on one side, which raises a question. Why? Frederick, Justice Breyer, let me answer your question in this way. We're not here saying that Mr. Lowe's is entitled to benefits that he hasn't paid for. He doesn't want that. Breyer, I understand that, but you also understand the asymmetry argument. And there are other asymmetries, of course. I'm just saying – I don't want to repeat myself. I'm just saying my real question here, and I wanted you to get narrow on it, and that's why I asked it. Why? Why did Congress want to change it? In your view? Frederick, Justice Breyer, in my view, the reason – Breyer, you're being quiet about it, by the way. Nobody is saying a word. And it being nearly years and years and years of the other thing, and then they suddenly changed it. And in your view, why? Frederick, Justice Breyer, I think the reason is that it had very little practical effect, because taxes were not being generated on these awards, and there was no real question about the benefits that were accruing. In most instances, the only time when the benefits side actually matters for these awards is when you can allocate dollars for a few months in order to get beyond the 20-year threshold or the 30-year threshold. That doesn't happen very often. And when it does happen, a practice has developed where the worker actually pays for those topped-up months. So take, for instance, a worker who's got 19 years and 10 months of service. He gets hurt on the job. It's the railroad's fault. He gets his FELA judgment. What that 1980 tax memorandum was talking about, the employee went forward and said, I'm willing to pay my taxes. I'd like to get credit for two months so that I can get my 20 years for my service. And the IRS said, that's okay. And that had been the way the statute was worded between 1946 and 1975. Now, I understand that since 1975, this informal practice has continued. It's not used very often. But we're not talking about a situation where you've got workers that are out there getting benefits based on these judgments, because the judgments typically don't allocate to particular months. And if you do not allocate the back pay award to particular months, then the Railroad Retirement Board doesn't have a basis for saying how you counted up toward the creditable service. And because of the way the benefits work, it doesn't typically benefit you to have 18 years of service or 17 years of service. You've got to get to 20 years in order to get to a new threshold. This matter is a practical thing. Justice Breyer simply was not deemed to be so significant as to affect things. I would further point out, as the Board, the Railroad Retirement Board's latest annual report indicates, the retirement system is going to be solvent for the next 29 years. You've got to ask the question, what difference does it make whether or not you impose the tax except as a means of altering the bargaining leverage between the railroads and their workers when the railroads have breached the duty of due care and caused injury to their workers? The Court has nothing further to submit. Roberts. Thank you, counsel. Five minutes, Ms. Black. Thank you, Mr. Chief Justice, and may it please the Court. Justice Ginsburg, on your jury instruction point, I don't think there's anything in the history of American jurisprudence that you get an instruction under FICA that you get to tell the jury to gross up. So I just don't know where in law they think you'd be even entitled to that instruction. Second, Justice Kavanaugh, in terms of the Narocco quality stores was the FICA side. And also, Justice Scalia signed quality stores, so I do think that that relates to What do we do? You say that there's no basis for a jury instruction to gross up. But it sounds like there's, for a long time, been a jury instruction requiring the jury to net down. Right. Isn't what's good for the goose good for the gander on this? Sure. If someone wants to argue it, no court has bought it. But I think the reason why in Lippelt is because there was like a, I don't know, 500% increase or inflation because taxes make up like 30%, 40%. And so the court said you're entitled to this instruction. But just remember, there are jury verdicts every day that are subject to both income taxes and FICA taxes, and I just have never seen a case where you're entitled to What do you say to Mr. Frederick's point that the reason why the railroad is so interested in this is to increase its leverage in settlement negotiations where the parties can allocate awards? And you're arguing pretty strenuously that they shouldn't be able to take into cognizance the tax issue in a jury judgment. Right. I mean, I told you why we're here. It is not to gain leverage. The one thing I didn't say, I thought I said, but apparently I didn't, was that the railroads are very concerned that the rates are going to go up. If there's a mismatch, they're directly, you know, they pay two-thirds of any rate increase. But on the settlement leverage, whatever you think happens about allocation, and this goes to you, Justice Sotomayor, regardless of what you do in this case, 231 for the benefit side requires allocation in every case for personal injury judgment. Now, if we prevail, whatever happens in terms of allocation on the taxing side, it is treated with parity on the benefit side. And that is to say, if employees are underreporting their taxes, they're going to get an underreporting in benefits. If they win, there is no downside, and the law allows them to allocate an entire award to the benefit side without any tax burden. So I think we win in terms of the dynamic to the net benefit on treasury. If you're worried about settlement dynamics, I mean, that is because of the H2, H2, yes, and 231 allows employees to allocate. The third thing, I do want to defend the government here because about this 1981 TAM, the reason probably the government didn't cite it is because it wasn't until the red brief that made all this huge thing about, oh, 80 years and 80 years. So just, I mean, the government wasn't aware it was going to be accused of any of this when they had a regulation on point that said any amounts paid for time loss. So we cited it in our brief. And also on the time loss, the bottom line of where I want to end, I mean, the problem for the other side, whatever he wants to say about the language, he concedes time loss payments are covered. I mean, one part of his argument, he fought it. Another part of the argument, he has to concede it because he concedes that vacation pay, sickness, I mean, whether or not he wants to admit it, you don't work on Christmas day and that's considered time lost and you, that's for services rendered. So the only thing with his case comes down to is whether a negligence judgment is somehow different from the type of payments that he concedes. And we don't think there's any textual or purposeful and, you know, in any event, I hate to cite it, but I will end with Chevron. I mean, he asked him when under the plain language for you to affirm. Thank you. Thank you, Ms. Blatt. Counsel, the case is submitted.